Filed 2/26/26  P. v. Bogan CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LADRILL BOGAN,<br><br>    Defendant and Appellant. | B342427<br><br>(Los Angeles County<br>Super. Ct. Nos. MA036409) |

APPEAL from an order of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Affirmed as modified with directions.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jason Tran, Supervising Deputy Attorney General, and Herbert S. Tetef, Deputy Attorney General, for Plaintiff and Respondent.

———————————————

In 2007 a jury convicted Ladrill Bogan of murder and assault on a child causing death after he inflicted lethal blunt-force trauma on three-year-old Jeremiah McKenney.  In a bifurcated bench trial, the trial court found Bogan suffered a prior strike conviction for first degree burglary and served two prior prison terms within the meaning of Penal Code section 667.5, former subdivision (b).[1]  The court sentenced Bogan to 52 years to life.

In 2024 the superior court recalled Bogan's sentence under section 1172.75 and struck the prior prison term enhancements.  However, the court denied Bogan's motion under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) to dismiss his strike conviction, and it resentenced him to 50 years to life.  Bogan contends the court abused its discretion because it failed to take into account Bogan's clean prison disciplinary record, rehabilitation efforts, and age.  We find no abuse of discretion.  However, Bogan also contends, the People concede, and we agree the $5,000 restitution fine imposed by the superior court must be vacated pursuant to recent amendments to section 1465.9.  We vacate the restitution fine but otherwise affirm.

———————————————

[1]      Further statutory references are to the Penal Code.

# FACTUAL AND PROCEDURAL BACKGROUND

A.     *Bogan's 2007 Conviction and Sentence*

We described the factual background of Bogan's conviction for killing Jeremiah in Bogan's direct appeal.  (See *People v. Bogan* (Feb. 11, 2009, B204652) [nonpub. opn.].)

Jeremiah died on September 20, 2006 while in the care of Bogan, his mother's boyfriend.  At trial, evidence was presented that on the morning of September 20, Jeremiah's face was unbruised and he was in fine physical condition apart from constipation.  By approximately 4:00 p.m., Jeremiah was not breathing, had no pulse, and had fresh bruises on his chest, chin, and knees.  Emergency medical personnel were unable to revive him.

Evidence at trial showed that Jeremiah died from blunt force trauma to his abdomen that caused internal bleeding.  He had suffered a massive laceration of the mesentery and posterior abdominal wall, where the mesentery was completely torn from his aorta.  Approximately 700 cubic centimeters of blood pooled in his abdomen.  Jeremiah's small intestine was torn in half, an injury that would be caused by a blow so deeply penetrating that it forces the anterior abdominal wall all the way back against the spine, severing the intestine.  Such an injury could not be inflicted by a child, instead requiring punches or kicks by someone with adult strength.  Jeremiah's pancreas was cut in half, and his liver was torn in multiple locations, bruised on the undersurface, and had hemorrhaged.  The large lacerations of the liver were caused by blunt force trauma.  His heart and lungs were bruised on their undersurfaces, and one lung had collapsed, although the lung collapse may have been caused by resuscitative

3

attempts.  The back of Jeremiah's head had a bruise of approximately 2.5 inches in diameter that was consistent with falling or being banged against a hard, flat surface.

While hemorrhages to Jeremiah's abdomen and diaphragm demonstrated that some of his injuries had occurred shortly before his death, the autopsy revealed that Jeremiah had older injuries as well.  A large abdominal hematoma with some signs of healing indicated that Jeremiah had suffered an earlier abdominal injury to the mesentery within a few days prior to the fatal injury.  He also had a bruise on his jaw that had been present for at least three days.

Bogan reported to the police that on the morning of September 20 he brought Jeremiah with him to a chiropractic appointment and then to the park.  Jeremiah played on a slide and fell a few times, but Bogan did not observe any injuries. Jeremiah had some stomach issues and appeared extremely tired, so Bogan placed him in the back seat of the car to sleep. Bogan also told the police that Jeremiah had fallen while trying to get into Bogan's sport utility vehicle, striking his head on the vehicle's running board, and Jeremiah cried afterwards.  When Bogan and Jeremiah arrived home, Jeremiah's mother said that Jeremiah was not breathing and was changing colors, and they called 911.  Bogan performed CPR while waiting for emergency personnel to arrive.  Bogan said Jeremiah had not been out of his sight that day from the time they left in the morning until the time they returned home.  He denied abusing Jeremiah but said he could not recall if he hit Jeremiah that day.  At trial, Bogan provided a similar account of what had happened on September 20.

4

The coroner opined Jeremiah's abdominal injuries could not have been caused by a fall from the height of a car seat in Bogan's vehicle, even if Jeremiah fell directly against the running board with his abdomen. Blows of the sort Jeremiah sustained would cause a child abdominal pain, and he would probably be unable to eat or keep food down. The coroner estimated that Jeremiah would have died from his injuries within approximately 45 minutes of their infliction. Jeremiah's body temperature at the time of his arrival at the emergency room indicated that he had already been dead for a couple of hours.

The jury found Bogan guilty of murder (§ 187, subd. (a); count 1) and assault on a child under the age of eight resulting in death (§ 273ab; count 2). In a bifurcated bench trial, the trial court found Bogan had been convicted on June 1, 2000 of first degree (residential) burglary (§ 459), which was a serious or violent felony conviction within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12). The court further found Bogan served two separate prior prison terms for felony convictions—for the 2000 robbery conviction and a 1994 conviction of accessory after the fact (§ 32)—within the meaning of section 667.5, former subdivision (b).

On December 10, 2007 the trial court sentenced Bogan to 52 years to life in state prison, comprising a term of 25 years to life for the child assault causing death, doubled under the three strikes law, plus one year for each of the two prison priors. The court also imposed a term of 32 years to life (15 years to life for second degree murder, doubled under the three strikes law, plus two prison priors), which the court stayed under section 654.

In pronouncing Bogan's sentence, the trial court stated, "[T]he savage beating that this child took—and it only could have

5

been at your hands, and that's based on the evidence presented. He was in your sole custody and care when this happened.  Just the force and the brutal nature of this crime[] is, frankly, appalling to me.  I just cannot imagine what was going through that child's mind when this was happening.  Frankly, it's horrific. And I, frankly, have nightmares about this myself as a parent. So you deserve the sentence that you got and I hope that you think about what you have done every second that you're alive."

We affirmed the judgment on appeal.  (*People v. Bogan, supra*, B204652.)

B.     *Bogan's Resentencing Under Section 1172.75*

In 2022 the California Department of Corrections and Rehabilitation (CDCR) identified Bogan on a list of inmates who were eligible for resentencing pursuant to Senate Bill No. 483 (2021-2022 Reg. Sess.) (Senate Bill 483), which retroactively invalidated one-year prison priors imposed under section 667.5, former subdivision (b).  On December 28, 2022 the superior court appointed counsel for Bogan.

On March 18, 2024 Bogan filed a petition for resentencing pursuant to section 1172.75.  The petition requested the superior court strike the now-invalid prior prison term enhancements; conduct a full resentencing; strike Bogan's prior strike conviction under *Romero* and in the interest of justice under section 1385; and switch the principal count by imposing a sentence of 15 years to life on count 1 for murder and staying a sentence of 25 years to life on count 2 for child assault causing death.  Bogan filed multiple exhibits in support of his petition, including handwritten statements of contrition, his life circumstances, and his reentry plans if paroled, as well as numerous CDCR records

6

reflecting his disciplinary record, classification, and participation in classes, work, and other prison programming. Bogan was provisionally accepted into a six-month residential reentry program with vocational, substance abuse, and mental health programming. Bogan also submitted a letter from his mother supporting his release, stating she was retired and disabled and needed assistance, and, as a certified counselor, she could help with his rehabilitation.

Bogan argued that dismissing the strike conviction would serve the interests of justice and comport with the Legislature's intent in Senate Bill 483 to reduce mass incarceration and address systemic racial bias. Circumstances that favored sentencing relief included the fact that (according to Bogan's handwritten statements) Jeremiah's murder did not involve "sophistication or planning" but was instead the result of a "resentful, angry, impulsive, immature and drug-addicted individual." Bogan's upbringing was characterized by trauma and loss, including physical abuse by his mother, who suffered from drug addiction and was incarcerated when Bogan was three years old, and shooting injuries Bogan sustained as a child that prompted him to join a street gang for protection at age 13. In addition, Bogan committed his prior felony offenses when he was young, and, according to Bogan, the offenses were remote in time relative to Jeremiah's killing: Bogan was 26 years old when he was convicted of burglary and just shy of 21 when he was convicted for being an accessory to armed robbery. Bogan was also arrested five times between the ages of 14 and 18.

Bogan presented evidence that during the almost 17 years he spent in state prison, he received no serious rules violations and only one minor misconduct notation for sitting at an

7

unassigned table (in 2009). Bogan's placement classification score improved from 77 at the time of his commitment to 19 (the minimum possible score for an inmate serving a life sentence) in 2017, and his security level improved from level 4 (maximum security) to level 2 (medium security). Bogan participated extensively in rehabilitation programs, including for substance abuse, conflict anger management, and child abuse prevention; he also attended Bible classes, had a ministry mentorship, and in 2018 obtained his high school equivalency certificate and was currently pursuing a college education. Bogan had many jobs while in prison, receiving satisfactory or superior performance reviews, and he received a special commendation for his work in furniture upholstery. Multiple recent risk assessments placed Bogan at a low risk of reoffending or posing other threats to society if released. Bogan was over 50 years old at the time of his petition, and empirical studies attached to the petition showed a declining risk of recidivism with age, particularly among "elderly" incarcerated persons who were 50 to 65 years old.

At the outset of the October 23, 2024 resentencing hearing, the superior court indicated it had reviewed the probation officer's report from 2006, the transcript of the initial sentencing hearing, the appellate opinion in *People v. Bogan, supra*, B204652, and "everything filed by the defense," including Bogan's petition, exhibits, and supplemental submissions. The People did not file a written opposition.

Bogan's attorney argued that under section 1172.75, "the intent of that law is to give significant weight to postconviction factors, [and] where there is no demonstrable public safety concerns, that there should be meaningful reductions" in lengthy sentences. The attorney also pointed to Bogan's "unparalleled"

8

record of rehabilitation. Further, the fact Bogan had only one minor rules violation over nearly two decades in prison (half of the time spent among a maximum-security population) was extraordinarily rare and showed Bogan's rehabilitation. Bogan's attorney observed that the burglary strike offense was committed seven years before Jeremiah's killing, and after serving three years without any rule violations, Bogan had been out of prison for at least four years before offending. Further, although Jeremiah's killing was egregious, at the time Bogan was a "massively drug-addicted individual who also was contending with untreated complex trauma" from abuse and street violence, which explained "why now, 17, 18 years later, having gone through a great deal of programming and treatment . . . , he's a very different person now."

The prosecutor focused her argument on the egregiousness of Bogan's crime, including Jeremiah's young age and personal relationship to Bogan, the extreme injuries Bogan inflicted, evidence of prior physical abuse (including recent injuries to Jeremiah's jaw and abdomen), and Bogan's prior denial of responsibility. The prosecutor also argued that Bogan's strike conviction in 2000 was not remote because Bogan had been incarcerated for three years before his release.

Bogan stated to the court, "I accept full responsibility of my actions and the heinous act I committed. I spend every day rehabilitating myself, thinking about the actions that I've done, and praying for my victims and their family, and it's a shameful act, and . . . I just apologize to the court and the family of my victims."

The superior court denied the *Romero* motion, explaining it was "taking into consideration all of the evidence that was

provided about [Bogan's] conduct while incarcerated in considering the *Romero* motion" under section 1172.75, subdivision (d)(3). However, the egregiousness of Jeremiah's killing made sentencing relief "difficult." Addressing the traditional *Romero* factors, Jeremiah's injuries were "atrocious" and not the type that a frustrated parent acting out of character might inflict. The court also considered the trial court's expression of shock at the severity of the crime at Bogan's original sentencing. In addition, Bogan provided false statements to the police and in his trial testimony, in which he denied responsibility. Further, Bogan's prior criminal history was "a revolving door up to and including [the strike offense] and the offense here."

With respect to postconviction considerations, the superior court found Bogan's clean prison record, although a worthy achievement, was not "as rare as counsel would have [the court] believe," and a defendant's housing location and classification "oftentimes can insulate or subject people to a lot of different circumstances." The court rejected defense counsel's suggestion that "the intent behind [section] 1172.75 is to allow everybody out of state prison once they turn 50." The court concluded, "I certainly appreciate Mr. Bogan's conduct while in prison and his now willingness to take responsibility for this crime, but when the court is looking at whether or not it is in the interest of justice to strike a strike here, the court does not feel that it is, in looking at the factors of this case in particular." The court also declined to exercise its discretion to select the murder count as the principal count and stay the longer sentence for child assault causing death.

The superior court struck the one-year prior prison term enhancements but made no further reductions in Bogan's sentence.  The court resentenced Bogan to 50 years to life in state prison on count 2 for child assault causing death (25 years to life, doubled under the three strikes law).  The court imposed and stayed a sentence of 30 years to life on the murder count (15 years to life, doubled).  Among various fines, fees, and assessments, the court imposed a $5,000 restitution fine, a reduction from the $10,000 restitution fine originally imposed by the trial court.

Bogan timely appealed.

## DISCUSSION

A.    *Section 1172.75 Resentencing Proceedings*

"'Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years.  [Citation.]  Effective January 1, 2020, Senate Bill No. 136 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 590) . . . amended section 667.5 by limiting the prior prison term enhancement to only prior terms for sexually violent offenses.  [Citations.]  Enhancements based on prior prison terms served for other offenses became legally invalid.'" (*People v. Garcia* (2024) 101 Cal.App.5th 848, 854 (*Garcia*); accord, *People v. Burgess* (2022) 86 Cal.App.5th 375, 379-380.)  The Legislature later enacted Senate Bill 483, effective January 1, 2022, to make the changes implemented by Senate Bill No. 136 retroactive by adding former section 1171.1 (now section 1172.75).  (See Stats. 2021, ch. 728, § 1; *Garcia*, at pp. 854-855.)

11

Section 1172.75, subdivision (a), provides, "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid." CDCR is required to identify for the sentencing courts all persons "currently serving a term for a judgment that includes an enhancement described in subdivision (a)." (§ 1172.75, subd. (b).) Further, if a sentencing court verifies a defendant was sentenced under an invalid enhancement, the court "shall recall the sentence and resentence the defendant." (*Id.*, subd. (c).)

"'By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly "invalid" enhancements.'" (*Garcia, supra*, 101 Cal.App.5th at p. 855; accord, *People v. Grajeda* (2025) 111 Cal.App.5th 829, 836.) Section 1172.75, subdivision (d)(1), states the resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety," and further, resentencing "shall not result in a longer sentence than the one originally imposed."

Section 1172.75, subdivision (d)(2), provides further that the sentencing court "shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).)

Section 1172.75, subdivision (d)(3), provides that "[t]he court may consider postconviction factors, including but not

limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."[2]

B.    *The Superior Court Did Not Abuse Its Discretion in Denying Bogan's* Romero *Motion*

1.    *Governing law on* Romero *motions and standard of review*

A trial court has discretion under section 1385, subdivision (a), to dismiss a strike conviction for purposes of sentencing in furtherance of justice.  (*People v. Williams* (1998) 17 Cal.4th 148, 158; *Romero, supra*, 13 Cal.4th at p. 530.)  In determining whether to dismiss a prior conviction, the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [three strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, at p. 161; accord, *People v. Dain* (2025) 18 Cal.5th 246, 257.)  A court's

---

[2]    Section 1172.75, subdivision (d)(4), contains additional provisions that "guide[] the trial court in selecting among the lower, middle, and upper term on each count."  (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402.)  The subdivision is inapplicable here because Bogan did not receive a determinate sentence.

discretion under section 1385, subdivision (a), and *Romero* to dismiss a strike offense is not limited by section 1172.75, subdivision (d).  (See *People v. Rogers* (2025) 108 Cal.App.5th 340, 360-364 [§ 1172.75, subd. (d)(2)'s "changes in law" limitation on resentencing did not foreclose court's discretionary authority to grant relief under § 1385, subd. (a), and *Romero*].)  Nonetheless, section 1172.75, subdivision (c), "promotes an examination of information and circumstances that did not exist at the time of the original sentencing which, in turn, evinces an intent that the resentencing court must sentence anew under present circumstances."  (*Rogers*, at p. 361.)

"[A] court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard."  (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*); accord, *People v. Dain, supra*, 18 Cal.5th at pp. 257-258.)  We likewise review a trial court's sentencing determinations in a section 1172.75 resentencing proceeding for an abuse of discretion.  (*People v. Mathis* (2025) 111 Cal.App.5th 359, 366, review granted Aug. 13, 2025, S291628; see *Garcia, supra*, 101 Cal.App.5th at pp. 855-856 [reviewing determination that a sentence reduction would endanger public safety for abuse of discretion].)  A trial court does not abuse its discretion in ruling on *Romero* motion unless its ruling "is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, at p. 377; accord, *People v. McDowell* (2012) 54 Cal.4th 395, 430.)  The party challenging the sentence has the burden to show the sentence was irrational or arbitrary.  (*Carmony*, at p. 376; *People v. Avila* (2020) 57 Cal.App.5th 1134, 1140.)  ""In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its

discretionary determination to impose a particular sentence will not be set aside on review.'" [Citations.] . . . "'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"'" (*Carmony*, at pp. 376-377.)

Because the three strikes law "creates a strong presumption that any sentence that conforms to [the law's] sentencing norms is both rational and proper," there are very limited circumstances under which the appellate court will find an abuse of discretion. (*Carmony, supra*, 33 Cal.4th at p. 378.) These circumstances include where the court is unaware of its discretion to strike a prior conviction; it considers impermissible factors; or, under the circumstances, imposition of a three strikes sentence would be irrational or arbitrary. (*Ibid*.; *Avila, supra*, 57 Cal.App.5th at pp. 1140-1141.) "In the absence of evidence to the contrary, we presume that the trial court considered all of the relevant factors and properly applied the law." (*People v. Brugman* (2021) 62 Cal.App.5th 608, 638; accord, *Carmony*, at p. 378.) Only under "'extraordinary'" circumstances does the court's failure to strike a prior conviction constitute an abuse of discretion. (*Carmony*, at p. 378; accord, *People v. Finney* (2012) 204 Cal.App.4th 1034, 1040 ["Once a career criminal commits the requisite number of strikes, the circumstance must be 'extraordinary' before he can be deemed to fall outside the spirit of the three strikes law."].)

2. *The superior court considered postconviction factors and did not abuse its discretion*

Bogan contends the superior court abused its discretion in denying his *Romero* motion because the court did not give adequate weight to postconviction factors that favored a reduced

15

sentence, such as Bogan's advanced age at the time of resentencing, his clean disciplinary record in prison, and evidence of rehabilitation. Contrary to Bogan's contention, the record shows the court considered these circumstances. There was no abuse of discretion.

The superior court considered the nature and circumstances of Bogan's present felony and his prior offenses, as required under *People v. Williams, supra*, 17 Cal.4th at page 161. As discussed, the court found this was a "difficult" case for sentencing relief because the crime was so "atrocious." Jeremiah was entrusted to Bogan's care, and Bogan inflicted blunt force trauma on the boy so severe it compressed Jeremiah's abdomen against his spine, severed the small intestine and pancreas, lacerated the liver, and filled the abdominal cavity with blood. Jeremiah would have suffered pain and likely died within 45 minutes of the assault. There was also evidence of earlier serious abuse. Bogan lied to the police and in court about the events leading to Jeremiah's death, and Jeremiah was dead for hours before emergency services were called. The court considered this evidence and observed that Jeremiah's injuries were more severe than those a frustrated parent might inflict when acting out of character.

The superior court also found Bogan's prior criminal history reflected "a revolving door," continuing until his commission of the current offense. Substantial evidence supported this finding: In 1988 Bogan, as a juvenile, served a term of detention for robbery. In 1994, when Bogan was about 21 years old, he was convicted of being an accessory to armed robbery and was sentenced to 16 months in prison. Just four years later (in 2000), when Bogan was 26 years old, he was

16

convicted of the strike offense for first degree burglary and served three years in prison; he killed Jeremiah approximately four years after his release.

Bogan argues "he is not the same person who entered the prison," and the superior court failed to consider his commitment to education, rehabilitation, and reentry. In reaching its decision, however, the court considered all the evidence Bogan's attorney submitted to show Bogan's good behavior and rehabilitation. The court commended Bogan for his conduct while in prison and his recent acceptance of responsibility, but it concluded that "in looking at the factors of this case in particular," it was not in the interest of justice to dismiss the strike. The court further found that Bogan's clean disciplinary record was in part due to his high-security housing while confined in prison. On this record, Bogan has not shown the court was unaware of its discretion to dismiss the strike offense, that the court considered impermissible factors, or that denial of the *Romero* motion was irrational or arbitrary. (*Carmony, supra*, 33 Cal.4th at p. 378.)

Moreover, contrary to Bogan's contention that the superior court "made light" of the fact he was now over 50, the court considered this factor but found his age did not mean he was necessarily entitled to relief. Bogan cites to multiple California and federal studies and reports (most of which were not before the trial court and are not properly before us) to present policy arguments for why there should be greater parole opportunities for older inmates who pose a reduced risk for reoffending and suffer diminished health and longevity. Whatever the merit of these arguments, they do not change our analysis. The superior court did not find that Bogan's age was irrelevant to his *Romero*

17

motion; rather, the court stated (correctly) that not every inmate who is over 50 is entitled to parole.

C.    *The Restitution Fine Must Be Vacated Under*
       *Section 1464.9, Subdivision (d)*

In resentencing Bogan, the superior court imposed a $5,000 restitution fine (§ 1202.4, subd. (b)), reducing the $10,000 restitution fine imposed at Bogan's original sentencing in 2007. Bogan contends, the People concede, and we agree the restitution fine must be vacated.  Effective January 1, 2025—two months after Bogan's resentencing—subdivision (d) was added to section 1465.9, and it provides, "Upon the expiration of 10 years after the date of imposition of a restitution fine pursuant to Section 1202.4, the balance, including any collection fees, shall be unenforceable and uncollectible and any portion of a judgment imposing those fines shall be vacated." (§ 1465.9, subd. (d), enacted in Assem. Bill No. 1186 (2023-2024 Reg. Sess.) (Stats. 2024, ch. 805, § 1).)

Section 1465.9, subdivision (d), applies retroactively to Bogan's reopened sentence.  (See *In re Estrada* (1965) 63 Cal.2d 740, 744-745 [absent evidence to the contrary, we presume ameliorative criminal statutes apply retroactively to all nonfinal judgments]; see *People v. Jennings* (2019) 42 Cal.App.5th 664, 681 [Senate Bill No. 136's changes to section 667.5, former subdivision (b), applied retroactively to sentences that were not final at the time the law became effective].)  Bogan's restitution fine was first imposed nearly 20 years ago and is now unenforceable and uncollectible under section 1465.9, subdivision (d).

18

## DISPOSITION

The $5,000 restitution fine imposed in the superior court's October 23, 2024 sentencing order is vacated. In all other respects, the judgment is affirmed. The court is directed to prepare and forward to CDCR an amended abstract of judgment.


FEUER, J.

We concur:


SEGAL, Acting P. J.


STONE, J.

19